**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MARILYN BRION,

    Plaintiff,

v.                                                                          Case No. 05-CV-71639-DT

ADRIAN STEEL COMPANY,

    Defendant.
                                                  /

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ADRIAN STEEL COMPANY'S "MOTION FOR SUMMARY JUDGMENT"**

Pending before the court is Defendant Adrian Steel Company's "Motion for Summary Judgment." The motion has been fully briefed and the court conducted a hearing in this matter on May 12, 2006. For the reasons stated below, the court will grant in part and deny in part Defendant's motion.

**I. BACKGROUND**

It is undisputed that Plaintiff Marilyn Brion was employed by Defendant from August 1, 1998 until May 4, 2004 as an at-will employee. During her tenure with Defendant, Plaintiff worked full-time in the bailment department, later the "Road/Redi" department. In her position, she was responsible for ensuring data consistency on the Spokane and Vehicle Ordering Management ("VOM") computer network systems for Defendant's General Motors clients, as well as credit and billing reporting. (Warnecke

Dep. at 10-11.)[1]  She also ensured that releases were done properly, performed edit checks, and communicated with employees at General Motors about its accounts.  (*Id.* at 30-32.)

Prior to her termination for what Defendant described as "improper conduct," (*see* Def.'s Mot. at Ex. B, May 4, 2004 Employee Reprimand), Plaintiff was counseled by her supervisor on at least two occasions relating to her job productivity, once in August 2003 and once in December 2003.  (*Id.* at Ex. A, Performance Evaluations.)  In the December 2003 evaluation, Defendant acknowledged that it had "seen improvements in [Plaintiff's] productivity since . . . August."  (*Id.*)  In the May 4, 2004 "Employee Reprimand" which documented Plaintiff's termination from Defendant's perspective, Mr. Warnecke stated that he witnessed a telephone conversation in which Plaintiff "was talking down other Teammates" and stated that "she felt the department was all screwed up."  (*Id.* at Ex. B, Employee Reprimand.)  Mr. Warnecke also stated that he heard Plaintiff make "derogatory comments . . . about Kari [an employee of Defendant]" and a "comment . . . regarding Katie and her new hairstyle."  (*Id.*)  Mr. Warnecke stated that when he confronted Plaintiff about her telephone conversation, she initially stated that she did not say that the department was "all screwed up," but later "re-track[ed] her statement" and "mention[ed] that what she was saying was in general to the overall changes within the sales department."  (*Id.*)  According to Mr. Warnecke, Plaintiff stated that she "was just listening to Laura [Brandon] vent her

---

[1]Mr. Jeffery Warnecke was Plaintiff's supervisor while she was employed by Defendant.  (*Id.* at 11.)

2

frustration with other employees (Tricia Reuter, Melinda Johnson, and Brandie Bennett)." (*Id.*)

Plaintiff's version of events varies greatly from Defendant's, inasmuch as Plaintiff disputes Defendant's characterization of the comments she made on the telephone on the day in question. (Pl.'s Dep. at 180-86.) Plaintiff admits to having received two phone calls from a co-worker within a ten to eleven minute span of time, but denies that she spoke in a derogatory fashion about any co-worker, stated that her department was "screwed up," or engaged in a continuous eleven-minute conversation. (*Id.* at 170; 180-86.) Plaintiff also denies that she retracted her statement in her discussion with Mr. Warnecke. (*Id.* at 180-86.) Plaintiff further claims that she rarely engaged in personal calls at work and testified that she was not cautioned or disciplined about phone calls she made prior to the incident for which she was allegedly terminated. (*Id.* at 172.)

It is undisputed that during her employment with Defendant, Plaintiff took FMLA leave due to the treatment of certain medical conditions. (*Id.* at 241-42.) At the time of her termination, Plaintiff suffered from various ailments, including, but not limited to diabetes, bladder cancer, and depression. (*Id.* at 8-9.) Plaintiff testified that she informed her supervisor about all of her medical conditions. (*Id.* at 241.)

Plaintiff initiated this lawsuit on April 26, 2005, alleging that Defendant terminated her employment in violation of the Family Medical Leave Act ("FMLA"), the Americans With Disabilities Act ("ADA"), the Employee Retirement Income Security Act ("ERISA"), and the Michigan Persons With Disabilities Civil Rights Act ("MPDCRA").

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material.  *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'") (citation omitted).  A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from the admissible evidence presented in a manner most favorable to the nonmoving party. *Dunigan v. Noble*, 390 F.3d 486, 492 (6th Cir. 2004) ("[W]e must determine 'not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed.'"). The court does not weigh the evidence to determine the truth of the matter, but must decide if the evidence produced creates a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

### III. DISCUSSION

### A. FMLA

The FMLA entitles an eligible employee to as many as twelve weeks of leave during any twelve-month period if the employee has a "serious heath condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The statute defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." *Id.* at § 2611(11). An employee seeking to use his FMLA leave must notify the employer that FMLA-qualifying leave is needed. *Chandler v. Specialty Tires of Am. Inc.*, 283 F.3d. 818, 825 (6th Cir. 2002); *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998). The FMLA also gives the Secretary of Labor notice and comment rule-making authority and directs the Secretary to issue regulations

5

"necessary to carry out" the Act. 29 U.S.C. § 2654; *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 86 (2002).

There are two distinct theories for recovery under the FMLA: (1) the "entitlement" or "interference" theory arising from 29 U.S.C. § 2615(a)(1); and (2) the "retaliation" or "discrimination" theory arising from 29 U.S.C. § 2615(a)(2). "The [FMLA] creates 'prescriptive and proscriptive employee rights.'" *Taylor v. Union Inst.*, 30 Fed. Appx. 443, 452 (6th Cir. Feb. 19, 2002) (unpublished opinion) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998)); *see also Arban*, 345 F.3d. at 400-01. Plaintiff's claim rests on allegations of retaliation for exercising her FMLA rights and substantive violations of her FMLA rights.

### 1. Retaliation Claim

Under Sixth Circuit precedent, the court examines claims of retaliation based on a plaintiff's exercise of FMLA rights in the same manner as other employment retaliation claims. More specifically, the Sixth Circuit has noted:

> [I]n *Skrjanc v. Great Lakes Power Service Company*, 272 F.3d 309 (6th Cir. 2001), this court held that the *McDonnell Douglas* burden shifting framework should be applied to FMLA retaliation claims that are based upon indirect evidence. . . . Under *McDonnell Douglas*, a plaintiff relying upon indirect evidence must first establish a *prima facie case*. The employer then has the burden of articulating a legitimate nondiscriminatory reason for the adverse employment action. Finally, the plaintiff must show that this nondiscriminatory reason was in fact pretextual and that unlawful discrimination was the real reason for the adverse action.

*Gibson v. City of Louisville*, 336 F.3d 511, 513 (6th Cir. 2003) (citations omitted). In order "to succeed on a retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment

6

action for having exercised an FMLA right." *Spurlock v. Peterbilt Motors Co.*, No. 01-6544, 2003 WL 463491, *1 (6th Cir. Feb. 19, 2003) (quoting *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1207 (11th Cir. 2001)); *see also King v. Preferred Tech. Group*, 166 F.3d 887, 891 (7th Cir. 1999). Thus, in the absence of direct evidence, the court employs the familiar *McDonnell Douglas* burden-shifting analysis.

To establish a prima facie case of retaliation under the FMLA, a plaintiff must establish: (1) that he engaged in a statutorily protected activity; (2) that the employer knew of his protected activity; (3) that he suffered an adverse employment action; and (4) that a causal connection existed between his protected activity and the adverse employment action. *Skrjanc*, 272 F.3d at 314; *see also Wade*, 259 F.3d at 463; *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990). If a prima facie case is established, the employer must produce a legitimate non-discriminatory reason for its actions, upon which event a plaintiff must come forward with specific evidence of pretext. Nonetheless, a plaintiff bears the ultimate burden of proving discriminatory retaliation by a preponderance of evidence at trial. *See Agee v. Northwest Airlines Inc.*, 151 F. Supp. 2d 890, 896 (E.D. Mich. 2001); *King,* 166 F.3d at 892 ("When a plaintiff alleges a retaliatory discharge under the FMLA, the plaintiff must similarly establish that the employer engaged in intentional discrimination.").

Defendant argues that it is entitled to summary judgment because Plaintiff has failed to establish a causal connection between her election to take FMLA leave and her termination and Defendant "had a legitimate, nondiscriminatory basis to dismiss Plaintiff." (Def.'s Mot. at 12, 14.)

7

### a. The "Causal Connection" Element of Plaintiff's Prima Facie Case

"The 'causal link' between the protected activity and adverse employment action is demonstrated by showing that the employer would not have taken the adverse action 'but for' the employee's protected activity." *Agee*, 151 F. Supp. 2d at 896; *see also Allen v. Dep't of Corrections*, 165 F.3d 405, 413 (6th Cir. 1999) ("In order to show a causal connection, a plaintiff must produce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action."); *King*, 166 F.3d at 892 ("To demonstrate the 'causal link,' the employee must demonstrate that the employer would not have taken the adverse employment action but for the employee's protected activity.").

No one factor is dispositive in the causal connection analysis and evidence that the defendant treated plaintiff differently from a similarly situated employee or that the adverse action was taken shortly after the plaintiff engaged in the protected activity is relevant. *Id.* More importantly, temporal proximity alone is rarely enough to satisfy the causal element. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563-66 (6th Cir. 2000); *Cooper v. City of North Olmsted*, 795 F2d 1265 (6th Cir. 1986).

In order to establish a causal link, Plaintiff must establish that her employer had knowledge of her protected activity when it made the decision to discharge her; without knowledge of the protected activity, there can be no inference that the adverse action was taken because of the protected activity. *See Wade*, 259 F.3d at 463 (holding that a prima facie case of retaliation requires showing that employer was aware of protected activity); *Strouss v. Mich. Dep't of Corrections*, 75 F. Supp. 2d 711, 727 (E.D. Mich.

1999) ("Since the decision to transfer Plaintiff [the adverse employment action] actually pre-dates Plaintiff's complaints to her supervisor about Dr. Givens [the protected activity], clearly no causal nexus exists between those complaints and her transfer . . . ."); *see also Gregory v. Texas Youth Commission*, 111 Fed. Appx 719, 721 (5th Cir. Sept. 28, 2004) (no causal link established when employer "designated as interviewers two panelists who testified under oath that they were not aware of [the plaintiff's] previous protected activity *when they made the promotion decision* [and the plaintiff] did not present evidence to the contrary.") (emphasis added).

In its motion, Defendant asserts that Plaintiff's claim that there is a causal connection fails because she "makes the [causal] connection in her mind based on her subjective speculation." (Def.'s Mot. at 13.) In the instant case, a reasonable jury could determine that the record reflects that Plaintiff's supervisors were aware of her medical conditions and certain adverse actions were taken against Plaintiff in relative proximity to her request for FMLA leave. Plaintiff testified that Mr. Warnecke brought in Melinda Johnson to fill in for her "a week prior to [Plaintiff's] surgery" and when Plaintiff returned to work after having been gone two days, "[Johnson] stayed and continued to do [Plaintiff's] work." (Pl.'s Dep. at 109.) Plaintiff also testified that "about fifty percent" of her tasks were permanently given to Johnson. (*Id.* at 117, 125.) In addition, Plaintiff testified that she repeatedly asked for additional job duties and responsibilities after her surgery, but was not given additional tasks. (*Id.* at 132-134.)

Moreover, Plaintiff testified that "after [her] bladder cancer" her supervisor, Kari Bateson, "berated [her] in front of the other staff, put [her] down, [and] would make

9

statements to make [her] look stupid." (*Id.* at 191-92.) Plaintiff also suggests that her supervisors informed her coworkers about her Irritable Bowel Syndrome ("IBS") condition because they ridiculed Plaintiff for a period of thirty days making statements such as "Where are you going, Marilyn?" and "Can we come, too, Marilyn?" when she would leave her work station. (Pl.'s Dep. at 115-116.) Plaintiff also testified that she believed that Kari Bateson encouraged two of Plaintiff's co-workers to harass her because she could not conceive of "any other way that they would know about [her meeting] with [Mr. Warnecke] and [her] meeting with Sue Grof and HR if it had not come down from [Bateson]." (*Id.* at 116.) Plaintiff testified that when she notified Mr. Wanecke about her doctor's appointment in April 2004, he "didn't think [she] was following protocol all of a sudden." (*Id.* at 104.) Plaintiff further claimed in her deposition that on May 3, 2004, one day prior to her termination, Mr. Warnecke told Plaintiff that "he was so mad at [her]" for not "following protocol" in requesting leave time. (*Id.* at 104-06.) Plaintiff has also presented Mr. Warnecke's testimony that he discussed Plaintiff's perceived "lack to take ownership in her job" with his supervisor, David Pilmore, approximately one and one-half years prior to her termination, at roughly the time Plaintiff requested FMLA leave. (Warnecke Dep. at 65.)[2] Plaintiff also presented Warnecke's testimony that there was "[nothing] disagreeable about [Plaintiff]

---

[2]The court, of course, is not suggesting that there *necessarily* is a connection between Plaintiff's request for FMLA and her termination solely because Warnecke discussed Plaintiff with Pilmore near the time that she requested FMLA leave. The court notes only that temporal proximity, when combined with other factors, can sometime be indicative of a causal connection.

interpersonally or unprofessional in the way she handled herself that [he] observed." (*Id.* at 25.)

Based on Plaintiff's evidence detailed above, there is at least an issue of fact as to whether there is a causal connection between Plaintiff's request for FMLA leave and her termination.

### b. Pretext

Even if Plaintiff makes out a prima facia case of FMLA retaliation, Defendant still has an opportunity to show that it had a legitimate reason to terminate Plaintiff. In order to defeat a motion for summary judgment once Defendant articulates its legitimate nondiscriminatory reasons, it is incumbent on Plaintiff to show that the proffered reasons were pretextual. *See Godfredson v. Hess & Clark*, 173 F.3d 365, 373 (6th Cir. 1999). Plaintiff must present evidence to create an issue of fact on the ultimate issue of discrimination.

The Sixth Circuit recognizes that a plaintiff may demonstrate pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003); *see also Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078 (6th Cir. 1994). The *Manzer* court succinctly explains each of these three methods of establishing pretext in employment discrimination cases.

> The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.,* that they are "factually false." *Baxter Healthcare,* 13 F.3d at 1123- 24.

11

> The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed "a suspicion of mendacity." *Hicks,* 509 U.S. at ----, 113 S.Ct. at 2749. As *Hicks* teaches, such a showing permits, but does not require the factfinder to infer illegal discrimination from the plaintiff's prima facie case.
>
> The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or coverup.
>
> If the bare bones elements of a plaintiff's prima facie case were sufficient to make this showing, however, the entire "burden shifting" analysis of *McDonnell Douglas* and its successors would be illusory. No case could ever be culled out after the prima facie stage and every case would have to be determined by a jury. We do not believe that this was the intent of Congress or the outcome envisioned by the Supreme Court in its long line of cases implementing employment discrimination legislation.
>
> Accordingly, we hold that, in order to make this type of rebuttal showing, the plaintiff may not rely simply upon his prima facie evidence but must, instead, introduce additional evidence of age discrimination.

*Manzer*, 29 F.3d at 1084 (emphasis in original).

Plaintiff asserts that Defendant's proffered reason for terminating her is pretextual because Plaintiff had no "history of absenteeism" during the period leading to her termination. (Pl.'s Resp. at 15).[3] Plaintiff also points to evidence that, in 2004, she

---

[3]In support of this contention, Plaintiff points to Defendant's Exhibit A, which contains Plaintiff's Performance Evaluations (as opposed to Defendant's employee handbook) as evidence that "during 2003, her unexcused absence rate (which did not

12

missed one day of work.  (Pl.'s Resp. at Ex. I, Monthly Attendance Records; Warnecke Dep. at 23-24; Def.'s Mot. at Ex. A, Performance Evaluations.)

Moreover, Plaintiff testified that she asked for job responsibilities and her job duties were curtailed against her will and that her frequent breaks were "an unavoidable consequence of her conditions of IBS and bladder cancer."  (Pl.'s Dep. at 132-34.)  Plaintiff also points out that the December 2003 annual review reflected that Plaintiff had addressed previously discussed areas, and the December review focused on items not included in the August evaluation, including attendance, creativity, and interpersonal relationships.  (Pl.'s Dep. at 138, Def.'s Mot. at Ex. A, Performance Evaluations.)  In addition, Plaintiff identifies in Defendant's employee handbook the statement that only long distance or toll personal calls not approved by a supervisor are "unauthorized," thereby in her estimation, implying that other personal calls do not constitute unauthorized conduct.  (Pl.'s Resp. at Ex. C, Employee Handbook Section 504.)  Plaintiff also testified that many of her coworkers engaged in phone calls to have "blow-outs" or vent.  (Pl.'s Dep. at 186.)  Moreover, Plaintiff testified during her deposition that she didn't believe that she made mistakes while in her position and "other people made

---

include absences under FMLA leave) did not exceed the company's maximum according to the employee handbook."  (Pl.'s Resp. at 15 (citing Def.'s Mot. at Ex. A).)  The court presumes that Plaintiff is referring to the section of Plaintiff's January 1, 2000 review concerning "attendance and reliability," which is described as "[t]he extent to which an employee is punctual, observes prescribed policies concerning scheduled hours, work breaks and meal periods, and can be relied upon to achieve a rate of absenteeism that is less than 2%."  (Def.'s Mot. at Ex. A.)  Defendant noted, in this section, that "[Plaintiff] is very punctual.  Absenteeism however is at 2%," which presumably indicates that Plaintiff did not meet Defendant's standards, at least as defined by Defendant's Performance Review form.  (*Id.*)

mistakes in [her] department that affected [her] job performance." (*Id.* at 60-63.) Defendant, meanwhile, asserts that "the record supports a legitimate reason for terminating Plaintiff's employment" and "courts have found that even a showing of a mixed motive for termination will support the granting of summary judgment for an employer defendant." (Def.'s Mot. at 15.) More specifically, Defendant makes the argument (under the "mixed motives" doctrine) that because the record supports a legitimate reason for terminating Plaintiff, Defendant should be granted summary judgment on this claim. (Def.'s Mot. at 15.) In support of this argument, Defendant relies heavily on *Manns v. Arvinmeritor*, Inc., 291 F. Supp.2d 655 (N.D. Ohio 2003). In the *Manns* case, however, the plaintiff had exceeded his FMLA leave time and was discharged for his absenteeism beyond that point (a reason separate from his taking FMLA leave) and the court held that "[o]nce the company concluded, on the basis of its records, that plaintiff had exceeded his FMLA leave, it could discharge him for absenteeism." *Id.* at 662. In addition, the *Manns* court determined that "[t]he record [did] not support [Plaintiff's] claim" that "his termination, even if he had exhausted his FMLA leave, was in retaliation for his having done so." *Id.* The court, however, is unable to make the same determination based on the record presented in this case.

Based on the additional evidence identified by Plaintiff, a reasonable jury could determine that Defendant's proffered reason for terminating Plaintiff was pretextual. Plaintiff has provided evidence beyond her prima facie evidence that could reasonably support an inference of discrimination. For these reasons, the court will deny Defendant's motion as to Plaintiff's FMLA retaliation claim.

### 2. Interference Claim

In her Count I of her complaint, Plaintiff alleges that she "was denied leave time for serious health conditions other than bladder cancer" and "[t]his course of conduct was a willful violation of the FMLA." (Pl.'s Compl. at ¶ 47-48.) Plaintiff, however, has not presented evidence that she was denied FMLA leave time that she requested. Instead, Defendant has presented the following deposition testimony:

> Q: Again, going back to FMLA leave as opposed to your medical condition as opposed to anything else, the mere fact that you applied and were granted FMLA leave *the two times that you formally applied for it, why do you believe that the company granting your FMLA leave* was a basis for the company deciding in May of 2004 to terminate you?
>
> A: God, I've got an answer for that.
>
> Q: As opposed to anything else?
>
> A: I can't recall my – I had this all figured out in my head and I apologize. I'm too tired to think of it right now. My brain is going dead.

(Pl.'s Dep. at 248-51) (emphasis added). Based on this deposition testimony, it appears that Plaintiff applied for FMLA leave only twice, and she was granted leave both times. As Plaintiff has not proferred evidence that she was denied FMLA leave, the court will grant Defendant's motion on this claim.

### B. The ADA and the MPDCRA

Plaintiff has also brought claims under the ADA and the MPDCRA. Under federal law,

> [t]he term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8). Under the ADA, a "disability" means either (1) a physical or mental impairment that substantially limits one or

15

more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2).

*Moorer v. Baptist Memorial Health Care System*, 398 F.3d 469, 479 (6th Cir. 2005).  In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show:

> 1) that he is disabled; 2) that he is otherwise qualified for his previous position with [the defendant], with or without reasonable accommodation; 3) that he suffered an adverse employment decision; 4) that [he] knew or had reason to know of his disability; and 5) that he was replaced or that his position remained open while [the defendant] looked for other applicants.  If he succeeds, the burden shifts to [the defendant] to provide a non-discriminatory explanation for its actions.  If [the defendant] satisfies its burden, [the plaintiff] must then come forward with evidence demonstrating that [the defendant proffered explanation is pretextual.  At all times, [the plaintiff] retains the ultimate burden of persuasion.

*Plant v. Morton Intern., Inc.*, 212 F.3d 929, 936 (6th Cir. 2000) (citations omitted).

Defendant argues that Plaintiff cannot be found to be a "disabled person" under the ADA because "any ailment she had at that time did not, by her own admission, limit any major life activity she needed to perform her job at Defendant."  (Def.'s Mot. at 11 (citing Pl.'s Dep. at 14).)  However, the appropriate standard does not that the "major life activity" be one that impacts Plaintiff's job.  *Moorer*, 398 F.3d at 479.  Indeed,

> [f]or major life activities other than working, the regulations define "substantially limits" as: "(i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."

*Black v. Roadway Express, Inc.*, 297 F.3d 445, 449 (6th Cir. 2002) (citing 29 C.F.R. §

1630.2(j)(1)).

A reasonable jury could determine that Plaintiff's medical conditions are impairments that "substantially limit" a major life activity. *See e.g. Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 467 (6th Cir. 1999) ("Given the evidence put forth during a three-day trial from which a jury could draw a number of conclusions, we are not prepared to hold as a matter of law that Workman is not disabled under the ADA [due to his IBS condition]. . . . [T]he jury could have decided that controlling one's bowels is a major life activity."). Plaintiff has also presented evidence, in the form of her e-mail to Elizabeth Felver, that, due to her diabetes, she could not "even see the eye chart [at her eye doctor's office] with [her] glasses on. It was a total blur" and she also stated that she "had been unable to eat for five days." (Pl.'s Resp. at Ex. G, 7/2000 E-mail to Elizabeth Felver.)

The same analysis would apply to Plaintiff's MPDCRA" claim as "Michigan handicap and employment discrimination law essentially tracks federal law. Generally, resolution of the federal claims will also resolve Plaintiff's MHCRA claims." *Cassidy v. Detroit Edison Co.,* 138 F.3d 629, 634 (6th Cir. 1998).[4] Because Defendant's argument

---

[4] The plaintiff bears the burden of proving a violation of the PDCRA. "To prove a discrimination claim under the [PDCRA], the plaintiff must show (1) that he is [disabled] as defined in the act, (2) that the [disability] is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute." *Chmielewski, supra* at 602, 580 N.W.2d 817.

A "disability," for purposes of article 2, MCL 37.1201-37.1214, is defined in MCL 37.1103(d) as: (i) "[a] determinable physical or mental characteristic of an individual . . . if the characteristic: (A) . . . substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position . . ."; (ii) "[a] history of [such a] determinable physical or mental

17

rests primarily in its contention that Plaintiff was not disabled, for the reasons stated above, the court will deny Defendant's motion on Plaintiff's ADA and MPDCRA claims.

### C. ERISA Claim

In her complaint, Plaintiff alleges that her "past and future anticipated claims for health benefits were a determining factor in the decision to discharge Plaintiff." (Compl. at ¶ 61.) Plaintiff claims that "[t]he adverse action was taken one day after Defendant learned of Plaintiff's health care schedule for the upcoming months and one day after Plaintiff's supervisor threatened to discharge her for going to a doctor appointment." (*Id.* at ¶ 62.)

The *Schweitzer v. Teamster Local 100*, 413 F.3d 533 (6th Cir. 2005) court held that:

> In order to state a claim under § 510, [a plaintiff] must demonstrate that [the defendant] had a specific intent to violate ERISA through either direct or circumstantial evidence. *Smith v. Ameritech,* 129 F.3d 857, 865 (6th Cir. 1997). This Court defines direct evidence as "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods., Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999). In other words, "direct evidence of discrimination does not require a

---

characteristic . . ."; or (iii) "[b]eing regarded as having [such a] determinable physical or mental characteristic . . . 'Unrelated to the individual's ability' means, with or without accommodation, an individual's disability does not prevent the individual from . . . performing the duties of a particular job or position." MCL 37.1103( l )(i).
Thus, like the ADA, the PDCRA generally protects only against discrimination based on physical or mental disabilities that substantially limit a major life activity of the disabled individual, but that, with or without accommodation, do not prevent the disabled individual from performing the duties of a particular job. *See Sanchez v. Lagoudakis* (After Remand), 581 N.W.2d 257 (1998). *Peden v. City of Detroit,* 680 N.W.2d 857, 863 (Mich. 2004).

> factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003).
>
> In the absence of direct evidence,[the plaintiff] must "state a prima facie case by showing the existence of (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employer may become entitled." Id. Following the presentation of such evidence, Local 100 is able to "rebut the presumption of impermissible action . . . by introducing 'evidence of a legitimate, nondiscriminatory reason for its challenged action.'" *Id.* (citing *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir.1992)). Schweitzer must then show that Local 100's explanation was pretextual. *Ameritech*, 129 F.3d at 865. Summary judgment is appropriate if Schweitzer does not present direct evidence, or "fails to establish a prima facie case or . . . to rebut the employer's proffer of a legitimate, nondiscriminatory reason for its actions." *Id*.
>
> In addition, in submitting a claim under § 510, the plaintiff is required to demonstrate a "causal link" between the adverse employment decision and the loss of benefits. *Id.* (citing *Humphreys*, 966 F.2d at 1044). In particular, "in order to survive [a] defendant's motion for summary judgment, [the] plaintiff must come forward with evidence from which a reasonable jury could find that the defendants' desire to avoid pension liability was a determining factor in [the] plaintiff's discharge." *Humphreys* at 1044. Thus, unless the issue of benefits is shown to be causally linked to the employer's decision to terminate an employee, the termination decision will not violate § 510 of ERISA. *See Mattei v. Mattei*, 126 F.3d 794, 808 (6th Cir.1997) (requiring that under § 510, a plaintiff must produce evidence indicating a causal connection between a defendant's challenged action and its interference with plaintiff's ability to receive an identifiable benefit).

*Id.* at 537. As discussed in the context of Plaintiff's FMLA retaliation claim, there is at least an issue of fact as to whether there is a causal connection between Plaintiff's election to take FMLA leave and the adverse employment actions she experienced. The court will, therefore, deny Defendant's motion as to Plaintiff's ERISA claim.

## IV.  CONCLUSION

IT IS ORDERED that Defendant's "Motion for Summary Judgment" [Dkt. # 15] is

19

GRANTED IN PART AND DENIED IN PART.  It is granted as to Count I of Plaintiff's Complaint and denied in all other respects.

          S/Robert H. Cleland
          ROBERT H. CLELAND
          UNITED STATES DISTRICT JUDGE

Dated:  July 27, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 27, 2006, by electronic and/or ordinary mail.

          S/Lisa Wagner
          Case Manager and Deputy Clerk
          (313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\05-71639.BRION.GrantingInPartDenyingInPart.SJ.FMLA.ADA.MPDCRA.ERISA.2.wpd